﻿Citation Nr: 19158981
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 11-30 246
DATE: July 30, 2019

REMANDED

Service connection for a right shoulder disability is remanded.

Service connection for a left leg disability, to include residuals of a gunshot wound, is remanded.

Service connection for peripheral vascular disease of the right lower extremity is remanded.

Service connection for peripheral vascular disease of the left lower extremity is remanded.

Service connection for hepatitis C is remanded.

Service connection for skin cancer is remanded.

REASONS FOR REMAND

The Veteran served on active duty from April 1971 to May 1976, with subsequent National Guard service through January 1999.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from an April 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO).

In December 2012, the Veteran testified during a videoconference hearing before the undersigned Veterans Law Judge regarding these claims. A transcript of that hearing is of record.

The Board remanded these matters in March 2014 and October 2017 for further development.

1. Service connection for a right shoulder disability is remanded.

The Veteran seeks service connection for a right shoulder disability, which he claims is related to an injury he sustained at Fort Bliss. In October 2017, the Board remanded this matter so that attempts could be made to obtain treatment records from the Fort Bliss Army Hospital. The Board observes that in 2014, the RO requested records from William Beaumont Army Medical Center at Fort Bliss for the period from January 1990 to December 1999. Unfortunately, the RO’s attempts were unsuccessful and of record is a December 2016 formal finding on the unavailability of records. While records were not available for that period, in a September 2008 statement, the Veteran indicated that he hurt his right shoulder at Fort Bliss in 1987. During his December 2012 hearing before the Board, he indicated that the injury was in 1989 or 1990. Given the Veteran’s report of injury at Fort Bliss prior to January 1990, a remand is warranted to request records from William Beaumont Army Medical Center for the 1980s.

2. Service connection for a left leg disability, to include residuals of a gunshot wound, is remanded.

The Veteran seeks service connection for a left leg disability, to include residuals of a gunshot wound. In the October 2017 remand, the Board requested an examination to obtain an opinion addressing the relationship between the Veteran’s current disability and service. The examiner was asked to address the Veteran’s lay testimony regarding an in-service gunshot wound to the left leg.

An examination was conducted in January 2018; however, the examiner provided a negative nexus opinion based on an x-ray report from 2009 showing no foreign bodies in the leg. However, an August 1995 private treatment record from B.M. shows a metallic foreign body in the proximal portion of the lower leg. Further, the examiner noted that x-rays from 2018 x-rays indicate “a tiny subcentimeter radiodensity perhaps representing tiny metal fragment overlying the soft tissues immediately medial to the proximal tibial diaphysis on frontal view.” The examiner did not consider either of these reports when providing the nexus opinion, thus, the opinion is inadequate for rating purposes. On remand, an examiner must be asked to reconcile the findings documented in 1995, 2009, and 2018 and provide an opinion indicating whether the Veteran has a left leg disability that is related to service.

3. Service connection for peripheral vascular disease of the bilateral lower extremities is remanded.

The Veteran seeks service connection for peripheral vascular disease of the bilateral lower extremities. In October 2017, the Board remanded these claims for a VA examination to determine the etiology of the disabilities. An examination was conducted in January 2018; however, in the opinion, the examiner lumped together three disabilities, to include peripheral vascular disease. The examiner did not make specific findings regarding the relationship between the Veteran’s peripheral vascular disease and service. Further, the opinion is not supported by rationale. Therefore, the opinion is inadequate for rating purposes and a remand is required to obtain an adequate opinion addressing these matters.

The Board also observes that in April 2019 argument, the Veteran alleged that his service-connected hypertension is a risk factor for peripheral vascular disease. In support of his argument, he cited to an article from the Mayo Clinic. Accordingly, on remand, an opinion must be obtained addressing whether the Veteran’s service-connected hypertension has either caused or aggravated his peripheral vascular disease of the bilateral lower extremities.

The Board notes that the United States Court of Appeals for Veterans Claims recently held that causation and aggravation are independent concepts and should have separate findings and rationales. See Atencio v. O’Rourke, 30 Vet. App. 74 (2018). As such, the examiner must provide separate findings and rationales relating to causation and aggravation.

4. Service connection for hepatitis C is remanded.

The Veteran seeks service connection for hepatitis C. In the October 2017 remand, the Board found the June 2011 VA examiner’s opinion addressing the etiology of hepatitis C was inadequate and remanded this matter for an adequate opinion. The Board specifically asked the examiner to indicate whether the Veteran had been diagnosed with hepatitis C at any time during the period on appeal and if so, to provide an opinion indicating whether hepatitis C is at least as likely as not related to service. The examiner was asked to address the Veteran’s in-service history of relevant symptomatology and his testimony regarding intravenous drug use and unprotected sexual encounters.

An examination was conducted in January 2018 and in the examination report, the examiner noted that the Veteran’s hepatitis C had cleared with zero viral load. In the opinion report, the examiner did not indicate whether the Veteran had had hepatitis C during the pendency of the claim. The examiner also lumped three disabilities together, to include hepatitis C, and found no relationship between the disabilities and service. The examiner did not specifically address hepatitis C as requested in the Board remand directives or support the opinion with rationale. Therefore, a remand is required to obtain an opinion in compliance with the October 2017 Board remand directives.

5. Service connection for skin cancer is remanded.

The Veteran seeks service connection for skin cancer. In the October 2017 remand, the Board found that the service treatment records contained repeated references to skin-related conditions, which the Veteran partially attributed to his in-service sun exposure while working outside. See, e.g., STRs dated October 1974 (noting boil on right lower arm and swollen lymph nodes) and March 1976 (noting chronic rash on right ankle); see also lay statement dated July 2009. Thus, the Board remanded the matter for a medical opinion addressing the relationship between his skin cancer and service. In the remand directives, the Board specifically ordered the examiner to provide the requested opinion and to address the Veteran’s testimony regarding in-service sun exposure and the repeated references to skin conditions contained in the service treatment records. 

An examination was conducted in January 2018. In the opinion report, the examiner lumped three disabilities together, to include skin cancer, and found no relationship between the disabilities and service. The examiner did not specifically address skin cancer, the Veteran’s testimony, or his service treatment records as requested in the Board remand directives. The examiner provided no rationale in support the opinion. Therefore, a remand is required to obtain an opinion in compliance with the October 2017 Board remand directives.

The matters are REMANDED for the following actions:

1. Associate with the claims file VA treatment records dated since May 2019.

2. Obtain and associate with the record all treatment records from Fort Bliss Army Hospital, William Beaumont Army Medical Center, dated prior to January 1990. Specifically, the Veteran has indicated treatment in 1987 or 1989, thus records for the 1980s must be requested.

If treatment records cannot be located or no such records exist, the Veteran and his representative should be notified in writing. If records are obtained, the RO should consider scheduling the Veteran for a VA examination to assess the nature and etiology of his right shoulder disability.

3. After completion of the foregoing, provide the Veteran with the following examinations to assess the nature and etiology of the claimed disabilities: (1) left leg; (2) peripheral vascular disease; (3) hepatitis C; and (4) skin cancer.

The claims file and a copy of this remand must be made available for review, and the examination reports must reflect that review of the claims file occurred. All pertinent symptomatology and findings must be reported in detail. Any indicated special diagnostic tests that are deemed necessary for an accurate assessment must be conducted.

Each examiner should elicit a complete history from the Veteran. It should be noted that the Veteran is competent to attest to matters of which he has first-hand knowledge, including observable symptomatology. If there is a clinical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

a. The left leg examiner must indicate the following:

i. Identify any left leg disability that the Veteran demonstrated during the appeal period, to include gunshot wound residuals;

ii. For each diagnosis identified, provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that the disability began in service, was caused by service, or is otherwise related to service. In this regard, the examiner must explicitly address the Veteran’s testimony regarding an in-service gunshot wound to the left leg. 

The examiner must also reconcile the findings in the August 1995 treatment record from B.M., which shows a metallic foreign body in the proximal portion of the lower leg; the x-ray report from 2009 showing no foreign bodies in the leg; and the 2018 x-ray report, per the VA examination, showing a tiny subcentimeter radiodensity perhaps representing tiny metal fragment overlying the soft tissues immediately medial to the proximal tibial diaphysis on frontal view.

A detailed rationale supporting the examiner’s opinion must be provided. If the examiner is unable to offer the requested opinion, it is essential that the examiner offer a rationale for the conclusion that an opinion could not be provided without resort to speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge. 

(b) The peripheral vascular disease examiner must indicate the following:

i. Identify whether the Veteran has been diagnosed with peripheral vascular disease of the lower extremities at any time during the rating period on appeal.

ii. If so, provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that the disability began in service, was caused by service, or is otherwise related to service. In this regard, the examiner is advised that the Veteran has NOT been found to have experienced in-service exposure to herbicide agents.

iii. If the foregoing is negative, then provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that the service-connected hypertension caused the peripheral vascular disease.

iv. If the foregoing is negative, then provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that the service-connected hypertension has aggravated (worsened) the peripheral vascular disease.

The examiner must provide separate findings and rationales for each opinion requested in (ii)-(iv). 

A detailed rationale supporting the examiner’s opinions must be provided. If the examiner is unable to offer any requested opinion, it is essential that the examiner offer a rationale for the conclusion that an opinion could not be provided without resort to speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge. 

(c) The hepatitis C examiner must indicate the following:

i. Whether the Veteran has been diagnosed with hepatitis C any time during the rating period on appeal;

ii. If so, even if hepatitis C is not currently present or active, indicate whether it is at least as likely as not (50 percent probability or more) that the disability began in service, was caused by service, or is otherwise related to service. In doing so, the examiner is instructed the address the Veteran’s in-service history of relevant symptomatology, and his testimony regarding intravenous drug use and unprotected sexual encounters.

A detailed rationale supporting the examiner’s opinion must be provided. If the examiner is unable to offer the requested opinion, it is essential that the examiner offer a rationale for the conclusion that an opinion could not be provided without resort to speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge. 

(d) The skin examiner must indicate the following:

i. Identify whether the Veteran has been diagnosed with skin cancer at any time during the rating period on appeal. If the Veteran has demonstrated repeated instances of this disability, the examiner should clearly identify each instance.

ii. If such a diagnosis is rendered, provide an opinion as to whether it is at least as likely as not (50 percent probability or more) that the disability began in service, was caused by service, or is otherwise related to service. In doing so, the examiner must explicitly address the Veteran’s testimony regarding in-service sun exposure, and repeated references to skin conditions contained in the Veteran’s STRs.

A detailed rationale supporting the examiner’s opinion must be provided. If the examiner is unable to offer the requested opinion, it is essential that the examiner offer a rationale for the conclusion that an opinion could not be provided without resort to speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge. 

4. Ensure that all development has been completed, to include ensuring that all opinions comply with the directives.

5. Then, readjudicate the Veteran’s claims on appeal. If the benefits sought on appeal remain denied, provide the Veteran and his representative a supplemental statement of the case and allow an appropriate period for response.

 

L. CHU

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD A. G. Alderman

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.